# Edward Howe

## *v.*

# The South Park Commissioners *et al.**

### *Filed at Springfield May 14, 1886.*

1. CHANCERY—*cross-bill—whether necessary, in order that a defendant may have affirmative relief.* On bill by part of the heirs of a deceased person to set aside a decree establishing an adverse title, the other heirs, made parties defendant, without a cross-bill, can not, independently of the complainants, have any affirmative relief against the decree, and they can not be heard to complain of the dismissal of the original bill.

2. SAME—*cross-bill—when not proper.* Where a defendant seeks the same relief as the complainant, and no other, a cross-bill is not proper, and if filed, would be dismissed on motion. So a cross-bill in a suit for partition is not necessary, when the defendant desires no more than the complainant seeks in his behalf.

3. APPEAL—*by whom—as to defendants in chancery, in respect to the dismissal of the original bill.* A portion of the heirs of a deceased person, claiming land, filed a bill against the holders of an adverse title, to impeach and set aside a decree establishing and confirming their title, making the other heirs not joining in the bill, defendants, with the holders of the adverse title. The heirs defendant answered, admitting the material allegations of the bill, but filed no cross-bill seeking affirmative relief, either against the complainants or their co-defendants. The bill, which, by amendment, also sought a partition, was dismissed, and an appeal was prosecuted by one of the complainants and several of the defendant heirs, and errors assigned. The complainant appealing, voluntarily dismissed his appeal, when the appeal by the defendant heirs was dismissed on motion of the defendants, this court holding there was nothing from which they could appeal.

4. ASSIGNMENT OF ERRORS—*by one not joining in an appeal.* A party not joining in an appeal from an order dismissing a bill, can not assign errors upon the record brought up by the appellants, without leave of court, and then only upon such terms as may be imposed. The dismissal of the appeals of those with whom he joins in assigning errors, has the effect also to dismiss his assignment of errors out of the case.

5. SAME—*as to a decree favorable to the party.* A party can not assign cross-errors on a decree in his favor dismissing a cross-bill filed against him.

*The following other appeals upon the same record were considered and disposed of: *Charles H. Lawrence* v. *South Park Commissioners et al., *Justus B. Smith* v. *South Park Commissioners et al.,* and *Mary A. Frazier et al.* v. *Edward Howe et al.*

6. SHERIFF'S DEED—*supported by relation back to date of purchase, after decree confirming the sale.* Prior to the bankruptcy of a party, land claimed by him was sold under execution, on a judgment against his grantor, and long after his bankruptcy, on bill against him and others, a decree passed confirming the validity of the sale under the execution, and requiring the sheriff to make the purchaser a deed, which was done: *Held,* that the making of the deed by the sheriff related back to and confirmed the title in the purchaser as of the date of his purchase, if the decree was valid and binding on the parties in interest.

7. LIMITATION—*as against assignee in bankruptcy—and his grantee.* Under the Bankrupt law of the United States, the assignee of a bankrupt was required, within two years, to recover whatever interest the latter may have had, when claimed by others adversely; and where the right of the assignee to maintain an action against an adverse claimant is barred before he makes a conveyance, his grantee will be equally barred.

8. LACHES—*as a bar to equitable relief—delay in asserting title to real estate.* A party seeking to defeat the title of his adversary to real property, must be diligent in discovering that which will avoid the title or render it invalid, and diligent in the application for relief. Unreasonable delay, not explained by equitable circumstances, affords evidence of acquiescence, and will bar relief.

9. So where a party, and those claiming under him, suffer a quarter of a century to elapse without asserting their claim to real estate, during which period it is held adversely, and transferred many times to purchasers for value, and no reason is given for the delay, the *laches* will be a bar to equitable relief.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. JOHN WOODBRIDGE, for the appellants:

As to the question of *laches,* see *Perry* v. *Burton,* 111 Ill. 138. *Laches* is not imputable, because the Cornell and Fellows title was fraudulent. Adams' Eq. 175, 176; *Greenman* v. *Greenman,* 107 Ill. 411.

A court of equity applies the doctrine of *laches* in denial of relief prayed, when the statutory period of limitation has not expired, only where, from all the circumstances in evidence, to grant the relief will presumptively be inequitable and unjust, because of the delay to the defendant's prejudice. *Stiger* v. *Bent,* 111 Ill. 341. See, also, *Hurlbut* v. *Bradford,* 109 Ill.

397; *Perry* v. *Burton*, 111 id. 144; *Kane County* v. *Herrington*, 50 Ill. 234; *Roberts* v. *Fleming*, 53 id. 197; *Walker* v. *Carrington*, 74 id. 453; *Castner* v. *Walrod*, 83 id. 171.

As to the Statute of Limitations being no bar, see *Irving* v. *Brownell*, 11 Ill. 413; *Ambrose* v. *Riley*, 58 id. 508; *Tell* v. *Ceaseford*, 26 id. 525; *Schenck* v. *White*, 53 id. 359; *Smith* v. *Stevens*, 82 id. 556; *McCartney* v. *McMullen*, 38 id. 241; *Rockwell* v. *Servant*, 63 id. 427; *Whitney* v. *Stevens*, 59 id. 53; *Hassett* v. *Johnson*, 48 id. 72.

Mr. CHARLES H. LAWRENCE, *pro se:*

Upon the bankruptcy of Harris, his estate, *eo instanti*, vested in his assignee.   A general description in the assignee's deed was good.  :(*Prettyman* v. *Walston*, 34 Ill. 191.)   Nor is it material that the land was not described in the schedule of Harris.   *Holbrook* v. *Coney*, 25 Ill. 518.

The recitals in the deed, coupled with the proof of the adjudication of Harris as a bankrupt, and the confirmation of the sale, make the deed good. *Holbrook* v. *Coney*, 25 Ill. 518; *Joy* v. *Berdel*, id. 537; *Holbrook* v. *Benner*, 31 id. 501; *Heath* v. *Hyde*, 87 id. 91.

The limitation in the Bankrupt law does not apply to sales and conveyances, or suits brought by a purchaser from the assignee, (*Holbrook* v. *Benner*, 31 Ill. 501, *Warren* v. *Miller*, 38 Me. 103,) nor to a party who takes possession after the proceedings in bankruptcy are commenced, (*Stevens* v. *Hansen*, 33 N. Y. 302,) nor where there has been a fraud which is not discovered more than two years before suit brought. *Clark* v. *Hackett*, 1 Cliff. 269; *Bailey* v. *Weir*, 21 Wall. 342.

Before the sheriff's deed the certificate of Gardner was merely a lien, and a secret one at that, and did not amount to an interest in the land itself. *Rucker* v. *Dooley*, 49 Ill. 380; *Curtis* v. *Millard*, 14 Iowa, 128.

The decree confirming the Gardner title was not binding upon the assignee in bankruptcy, or his grantee, merely be-

cause the bankrupt was made a party. *Atkinson* v. *Farmer's Bank,* Crabbe, 529.

Messrs. SLEEPER & WHITON, for the appellees Morton and Clement:

The Municipal court was an original court of superior jurisdiction, (*Beaubien* v. *Brinkerhoff,* 2 Scam. 272,) and hence every presumption will be indulged in favor of its jurisdiction. *Peacock* v. *Bell,* 1 Saund. 74; *Foot* v. *Sexias,* 17 Wend. 483; *Kenney* v. *Greer,* 13 Ill. 432.

Conceding the objections to the judgment of the Municipal court, and the execution thereon, the effect of the decree in the Cornell and Fellows bill was to divest the title from Harris, and vest it in Gardner, upon the execution of the sheriff's deed.

As to the Statute of Limitations, and *laches,* as a bar, see *Collier* v. *Beers,* 106 Ill. 150; *Pratt* v. *Yeaton,* 101 id. 247; *Maher* v. *Farwell,* 97 id. 56; *Hancock* v. *Harper,* 86 id. 455.

As to defective description in sheriff's deed, and reformation, see *Solomon* v. *Brazael,* 27 Ga. 200; Freeman on Executions, sec. 281; *Hawley* v. *Simmons,* 102 Ill. 115.

Messrs. DENT, BLACK & CRATTY BROS., for the appellee James Stinson:

Subsequent *bona fide* purchasers had a right to rely upon the Cornell and Fellows decree, and were not required to look behind it. *Feaster* v. *Fleming,* 56 Ill. 457; *Dugan* v. *Follett,* 100 id. 590; *Jenkins* v. *Rosenberg,* 105 id. 157; *Dunning* v. *Bathrick,* 41 id. 425.

The original complainants, claiming through Harris, are bound by the decree in favor of Cornell and Fellows. *Hodgen* v. *Guttery,* 58 Ill. 431; *Kirkland* v. *Cox,* 94 id. 401; *Vallette* v. *Bennett,* 69 id. 632.

The bill was not filed in time. *Sloan* v. *Sloan,* 102 Ill. 581; *Evans* v. *Bacon,* 99 Mass. 213.

The assignee's rights were barred, under the Bankrupt law, when Cornell and Fellows filed their bill. *Clark* v. *Hackett,* 1 Cliff. 270; *In re Conant,* 5 Blatchf. 54; *Jenkins* v. *International Bank,* 106 U. S. 571; *Cleaveland* v. *Boerum,* 24 N. Y. 613; *Allen* v. *Woodruff,* 96 Ill. 13.

The parties are all guilty of inexcusable *laches,* in a fatal measure. *Lansdale* v. *Smith,* 106 U. S. 391; *Bell* v. *Johnson,* 111 Ill. 374; *Warder* v. *Cornell,* 105 id. 169.

Mr. Melville W. Fuller, for the South Park Commissioners:

The motion to dismiss the appeal of Howe, W. C. Clark, Mary C. Clark, Lora A. McCrary and Mary A. Frazier, should be allowed.

The defence of *laches* may be set up and availed of by demurrer. *Furlong* v. *Riley,* 103 Ill. 628; *Ilett* v. *Collins,* id. 74; *Maxell* v. *Kennedy,* 8 How. 222.

The bill is not maintainable as a bill of review. Such a bill must be brought within the time for suing out a writ of error. *Sloan* v. *Sloan,* 102 Ill. 591; *Lyon* v. *Robins,* 46 id. 276; *Bell* v. *Johnson,* 111 id. 379; Story's Eq. Pl. sec. 410.

Ignorance of one's rights does not stop the running of the statute. *Conner* v. *Goodman,* 104 Ill. 368; *Campbell* v. *Long,* 20 Iowa, 382; *Martin* v. *Bank,* 31 Ala. 115.

A court of equity will refuse its aid to stale demands when the party has slept upon his rights, or acquiesced for a great length of time. *Carpenter* v. *Carpenter,* 70 Ill. 457; *McKean* v. *Vick,* 108 id. 376; *McDonald* v. *Stowe,* 109 id. 45; *Castner* v. *Walrod,* 83 id. 171; *Whipple* v. *Whipple,* 109 id. 424; *Brown* v. *Buena Vista County,* 95 U. S. 157.

Messrs. Bisbee, Ahrens & Decker, for the appellee Charles W. Stevens.

Mr. Joseph N. Barker, and Mr. Lynden Evans, for the appellants, in reply.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The appeals taken by the several parties are all upon the same record, and have been submitted together, to be considered as one case. The original bill was filed February 11, 1871, by a part of the heirs of Benjamin Harris, who died intestate, in Iowa, in 1863, and who, it is alleged, was the owner of the lands in controversy. To that bill the South Park Commissioners, James Stinson, and others, were made defendants. Some of the defendants to the original bill were defaulted, and others demurred, but before the cause came to a hearing the files were destroyed by fire, October 9, 1871. Subsequently the files were restored, by leave of court. The original bill was framed with a view to impeach a decree obtained by Cornell and Fellows, confirming, in a remote grantee of theirs, what is called the Gardner title to the premises, on account of the fraud of complainants in obtaining it. The other heirs of Benjamin Harris do not seem to have been made parties to the original bill, nor did the bill, as originally framed, ask for a partition of the estate. But an amendment filed October 9, 1872, among other things, made the other heirs defendants, and asked that the shares of the property to which complainants might be entitled, should be set apart to them. It does not appear that the other heirs were brought into court, at that time, by summons, publication, or otherwise. The South Park Commissioners, James Stinson, Charles H. Lawrence, and perhaps other defendants, filed separate demurrers to the original bill, as amended, which were sustained by the court, and the bill dismissed for want of equity. The decision of the circuit court sustaining the demurrers to the original bill was afterwards reversed in this court, and the case is reported as *Harris et al.* v. *Cornell et al.* 80 Ill. 54. The opinion then delivered contains a very full statement of the contents of the original bill, and reference is made to the opinion for a history of the case, which is so full as to make it unnecessary to further state the facts.

On the *remittitur* from this court being filed, the defendants, claiming the property adversely to complainants, answered the bill, and all of them, except Lawrence, claimed to hold their respective interests in the premises under a sheriff's sale, made on an execution issued on a judgment in favor of Jefferson Gardner against Mark Noble, Jr., as the same was afterwards confirmed, on a bill filed by Cornell and Fellows, against Mark Noble, Jr., Benjamin Harris, and others, which title, they allege, came to them, or some of them, by a regular chain of conveyances from Gardner, who was the purchaser of the property at the sheriff's sale.   As the answers are not under oath, they are not important, except in so far as they set up statutes of limitations, and the *laches* of the parties claiming title adversely to them, as a bar to any relief.   Lawrence, one of the defendants, who claims the whole property as a grantee of the assignee in bankruptcy of Benjamin Harris, and perhaps as grantee of a prior assignee under a voluntary assignment made for the benefit of creditors, in or against all the other parties, after filing his answer to the original bill, filed a cross-bill, in which, in substance, he asked to have his title established and that of his adversaries cancelled.   It was not until October, 1883, that the other heirs of Benjamin Harris were brought into court by publication, although they had been named defendants by an amendment to the original bill, made in 1872.   About the same time, Edward Howe, one of the parties assigning error on this record, was made defendant to the bill, as a grantee of some of the alleged heirs of Benjamin Harris, deceased.   Later on, perhaps in March, 1883, Mary A. Frazier, W. C. Clark, Mary C. Clark and Lora A. McCrary, all of whom assign errors on this record, were substituted as defendants in the place of Joseph James Harris, one of the alleged heirs of Benjamin Harris, as the grantee of his interest in the property.   All of the parties lately made defendants answered the original bill of complainants, and also the cross-bill of Lawrence.   The amendment made to the

original bill in September, 1883, stated the alleged interest of complainants, and such of defendants as were grantees of the other heirs of Benjamin Harris, deceased, and for the first time asked for a partition of the lands among all of the heirs or their grantees. The last amendment made to the original bill, and also to the cross-bill of Lawrence, alleges some infirmities in the judgment of Gardner against Noble not stated in the original bill, and which for that reason do not appear in the first opinion of this court, where the history of the case is given. It is alleged the Municipal court in which the judgment was rendered, had no jurisdiction of the person of defendant in that case, on account of the insufficient service of the summons, and therefore the judgment was absolutely void. Other grounds for relief were stated, but it will not be necessary to state them, in the view that is to be taken of the case.

Without making any detailed statement of the titles claimed by the respective parties, it will be seen they all claim the title that was in Mark Noble, Jr., prior to July, 1837. It is conceded the title that was vested in Jeduthan Smith, by patent from the government, passed to Mark Noble, Jr., by a regular chain of conveyances. There was a misdescription of the property to be conveyed, in some of the deeds made, but that is not a matter important to be considered now. On the 6th of October, 1836, Mark Noble, Jr., and wife, conveyed the land to Benjamin Harris. It is under that deed that complainants and their grantees claim title to the property. But Harris did not record his deed until August 1, 1837. In the meantime, on the 7th day of July, 1837, Jefferson Gardner recovered a judgment, in the Municipal court of Chicago, against Mark Noble, Jr., for $251.56, and costs of suit. One or more executions on that judgment were issued out of that court, directed to the high constable of Chicago, and perhaps something was made on one of them. The first execution was issued within less than one year after the judgment was rendered. That court seems to have had concurrent juris-

diction with the circuit court of Cook county in all matters arising in that county. The act of the legislature that abolished the Municipal court, provided that thereafter all executions to be issued on judgments remaining of record in that court should be issued by the clerk of the circuit court of the county of Cook. Afterwards, on the 5th of February, 1840, an execution was issued by the clerk of the circuit court, on the judgment in Gardner against Noble, directed to the sheriff of Cook county, to be executed. There is no dispute as to the fact, this execution was attested in the name of the clerk of the circuit court, but whether it had attached the seal of the circuit court or the seal of the Municipal court, is a matter of contention. It was on this execution the property was sold, and was bought by Gardner, the plaintiff in execution. Afterwards, Gardner conveyed, by his deed, his interest in the property, so that his equitable title, which he acquired under the sheriff's sale to him, passed to Paul Cornell and Elisha C. Fellows. At the time Cornell and Fellows obtained their title to the property, no deed had been made by the sheriff to Gardner. Afterwards, in 1854, Cornell and Fellows filed their bill to have Gardner's title, obtained at the sheriff's sale, confirmed, and to require the sheriff to make a deed to Gardner for the land sold to him. Benjamin Harris was made a defendant to that bill, with Mark Noble, Jr., and others. A decree passed in favor of complainants, in substance confirming the validity of Gardner's purchase, and directing the sheriff to execute to him a deed for the property, which he did, as directed by the decree of the court. It is under the Gardner title that the South Park Commissioners and Stinson deraign their respective titles, which they insist are the paramount titles, and should prevail. Whether the South Park Commissioners have acquired the title to the entire tract of land in controversy, or whether Stinson or others own a part of it, is not made a question in this case, and as to which, of course, no opinion is expressed.

Going back in the history of the case, it is seen that in 1843 Benjamin Harris, on his own petition, was adjudged a bankrupt in the United States District Court for the District of Illinois, and Cyrus F. Miller was appointed assignee, who, after being duly qualified, entered upon the discharge of the duties of the trust. In 1844, the assignee, by general description, conveyed the interests in the assets of the bankrupt that had come to him, to Anson S. Miller. That sale was approved May 15, 1847. On the 5th of April, 1847, Anson S. Miller, by the same indefinite description, conveyed all he had acquired under the assignee's deed to him, to Benjamin Harris and Daniel King. That title, whatever it was, has since come to Lawrence, complainant in the cross-bill, by deed from Morris Neustadt, dated July 10, 1871. Back of all this, it seems that, in 1839, Benjamin Harris made a voluntary assignment of all his property, for the benefit of his creditors, to Jacob Early. What the assignee under that assignment may have done, if anything, does not appear. In 1871, Jacob Early conveyed whatever interest he had in the land in controversy, to Morris Neustadt, by deed dated May 13, 1871, and on the 19th day of that month Neustadt conveyed the same interest to the complainant in the cross-bill. It is the title derived from one or both of these sources that Lawrence insists is the better title, and the one that should be sustained. The cause was submitted for decision at the June term, 1885, of the circuit court, on the pleadings of the parties and the evidence introduced to sustain their respective titles, and a decree was entered shortly thereafter dismissing both the original bill and the cross-bill, for want of equity.

The only one of the complainants in the original bill that appealed from the decision of the circuit court dismissing their bill, was Justus B. Smith. Since then, at the September term, 1885, on his own motion, his appeal was dismissed by this court. At the same term of court, one of defendants

entered a motion to dismiss the appeal taken by defendant Edward Howe, from the decision of the circuit court, to this court, and also to dismiss the appeal taken by the other defendants, Mary A. Frazier, William C. Clark, Mary C. Clark and Lora A. McCrary. That motion was reserved for consideration until the final decision should be rendered, and the cause was then, by consent of parties, transferred from the Northern Grand Division to the Central Grand Division, where the cause was taken for decision. The motion to dismiss the appeals mentioned, has now been considered, and the conclusion reached is, it should be allowed. As before stated, Edward Howe claims title to an undivided interest in the property in controversy, under conveyances from some of the heirs of Benjamin Harris. He neither claims nor insists upon any other title. It appears he was not made a defendant until 1883, and filed no answer until the 24th day of March, 1885. In his answer then filed, he admits most of the allegations of complainants' original and amended bills, and insists upon the same infirmities in the judgment of Gardner against Noble, and in the execution issued thereon, and asks for a partition of the estate. At the same time he also answered the cross-bill of Lawrence. The other defendants, Mary A. Frazier, W. C. Clark, Mary C. Clark and Lora A. McCrary, whose appeal is embraced in the motion to dismiss, were substituted as defendants, instead of Joseph James Harris, on March 31, 1885, and filed their answer to the original and cross-bills. Neither of these parties filed any cross-bill. It is further to be observed, that the original bill was framed with no other view than to impeach for fraud the decree obtained by Cornell and Fellows, confirming the Gardner title in him for the benefit of the holders of his title. Afterwards, the bill was amended so as to ask a partition of the estate between the heirs of Harris and their grantees.

It is obvious, the principal object of the original bill, even as amended, was to have the Cornell and Fellows decree set

aside and declared to have no effect.    So long as that decree stood, it was an effectual bar to any partition of the estate, either between the heirs or their grantees.    It was around this central fact the whole controversy hinged.    If that decree could be set aside, it would follow, as a matter of course, if application was made in apt time for that purpose, that partition would be made of the estate among the parties owning it.    It was not a question whether partition should be made. It was from the beginning, and is now, the principal question, whose title is superior and must prevail.    There is not now, and never was, any controversy between the heirs or their grantees concerning the question of partition, in case they should be successful in removing the adverse title.    The contention, from the outset to the present time, has been between the parties claiming the Harris title and those claiming the Gardner title.    Both the complainants and defendants claiming the Harris title were assailing the Gardner title held by defendants.    It is seen the complainants have all ceased to make any further contest as to the validity of the Gardner title, that has stood in the way as an insurmountable objection to any partition of the estate, unless it is Chauncey W. Harris, and as to the errors assigned by him, they will be noticed further on.    It is sought to continue the contest between the grantees of the Harris heirs and the South Park Commissioners, and other defendants holding the adverse title deraigned through Gardner, by assigning errors on the original bill against them.    This can not be done.    Neither of these defendants whose appeal is embraced in the motion to dismiss, ever filed any cross-bill for relief in their favor, as against the parties claiming the adverse title.    It seems the only parties now insisting upon the Harris title are these defendants assigning error on the original bill against themselves.    The only party that appeared to have any further interest in the property was Justus B. Smith, who has since dismissed his own appeal, and who, with the other complain-

ants, now acquiesces in the decision of the circuit court in dismissing the original bill. There is really nothing left for these defendants to appeal from, since the original bill has been dismissed. There is absolutely no bill pending against the defendants holding the adverse title derived from or through Gardner. These defendants appealing have no cross-bill upon which they can obtain any relief whatever against the effect of the Cornell and Fellows decree, and while that stands, all relief as to them is forever barred. So far as they are concerned, there is no bill pending in their favor upon which any relief could be obtained against the other defendants. If the original bill asked no further or other relief than to set aside and impeach the decree confirming the title to the property in Gardner, under his purchase at the sheriff's sale, it would hardly be insisted these defendants could appeal from a decision dismissing the original bill. But it is said, that as the original bill, as amended, asked for partition, that rendered it unnecessary for these defendants to file any cross-bill. Undoubtedly, the rule is as counsel state it, that on a bill for partition, where the defendants claim the same relief for themselves as is sought by the original bill, no cross-bill is necessary. Whatever relief the defendants may be entitled to, against the *complainants,* in a bill for partition, may be obtained by them on answer. In such case, a cross-bill would be improper, for the rule is, when defendants ask only the same relief as complainants do, a cross-bill asking no other relief would be dismissed on motion. But that is not this case. Here, these defendants appealing neither desired nor asked any relief as against the original complainant, and, of course, as to them no cross-bill was necessary. What they now seek is affirmative relief against their *co-defendants* holding an adverse and independent title. That, they have not asked for by any cross-bill, and without such a bill no relief could, in any event, be granted to them. The case now stands in this way: The original bill that asked to have the adverse

8—119 ILL.

title of defendants set aside has been dismissed out of court, and all of complainants having any interest in the subject of that bill have acquiesced in that decision. These defendants have no cross-bill asking any relief against their *co-defendants* as to the adverse title held by them. There is, therefore, nothing from which these defendants could appeal. Clearly, they can not hold the original bill against themselves, and assign errors on it against their co-defendants. That could only be done by cross-bill. It could be done in no other way. The appeal of these defendants must be dismissed.

Chauncey M. Harris was one of the complainants in the original bill. An amendment to the original bill, made in September, 1883, shows he has since conveyed all his interest in the lands involved, and that interest, whatever it was, has passed to and is now held by defendant, Edward Howe. He did not join with his co-complainant, Justus B. Smith, in taking an appeal from the decision of the circuit court, nor did he ask for or take any separate appeal on his own behalf, yet he has assigned errors on the record brought to this court by other parties appealing. That, he can not do, without leave of the court, and if leave should be granted, it would, perhaps, be upon terms that might be imposed. The errors assigned by him are called cross-errors. That is not accurate. They are in no sense cross-errors, as that term is used in the statute. They are, in substance, the same as the errors assigned by defendants appealing, and as printed in the abstract they are identical with the other errors assigned by them. Being upon the same record, and not cross-errors, the errors assigned by him since the appeals of the other parties with whom he seeks to join in assigning errors have been dismissed, those assigned by him must be regarded as also dismissed, with the appeals in which they are assigned. Both fall together. Had he been injuriously affected by the decree of the court dismissing the cross-bill of Lawrence, there is no reason why he could not have assigned cross-

errors on the record in his appeal.   He was a defendant to
the cross-bill, but the decision dismissing it was wholly and
entirely in his favor.   There could be no complaint, on his
part, as to that decision, and he has not assigned, and could
not assign, cross-errors on the decree in his favor, dismissing
the cross-bill.

The court, on the final hearing of the cause, dismissed the
cross-bill of Charles H. Lawrence, and from that decision he
asked for and was allowed an appeal, which he afterwards
perfected.   The questions made on that appeal remain to be
considered.   It will be done briefly.   One source of title which
he insists upon, is under a deed from Cyrus F. Miller, assignee
in bankruptcy of Benjamin Harris.   It will be recollected
that Harris was adjudged a bankrupt, on his own petition,
in 1843.   Whatever title he may have had in the property in
controversy at that time, vested in his assignee in bankruptcy.
Prior to his bankruptcy, the land had been sold on an execu-
tion issued on the judgment of Gardner against Noble, as the
property of the judgment debtor, and had been bought at the
sheriff's sale by the plaintiff in execution.   Later on, in 1856,
on a bill filed by Cornell and Fellows, and to which the bank-
rupt was made a defendant, with others, a decree passed con-
firming the validity of the sale of the property to Gardner,
and requiring the sheriff to make him a deed.   The making
of the deed by the sheriff, as was done, would relate back to
and confirm the title in him as of the date of his purchase,
if the decree was valid and binding on the parties in interest.
There was then, at the date Harris was adjudged a bankrupt
and the title to his property vested in his assignee, an appar-
ent title, or at least an interest, in the grantees of Gardner,
adverse to the title of the bankrupt.   Possession was taken
under Gardner's title, whatever it was, and unless it was in
some way assailed by the assignee, in apt time, it is obvious
it would mature into a paramount title that would prevail
against any title that was in the assignee.   That was not

done, either by the assignee or his grantee. Section 5057 of the Revised Statutes of the United States, provides: "No suit, either at law or in equity, shall. be maintainable in any cause between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or right of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee." In this case there was certainly an *interest* in the grantees of Gardner in the land, adverse to the title of the bankrupt; and unless the assignee undertook to recover that interest within two years from the time the right accrued to him,—which was at the date of his appointment, in January, 1843,—his right to do so would be forever barred. Whatever title came to him from the bankrupt, remained in him until 1847, when he conveyed to Anson S. Miller. As the right of the assignee to maintain an action at law or a suit in equity to recover the interest claimed by other parties adversely to the rights of the bankrupt's estate, was then barred by the statute, no grantee of the assignee could maintain a suit to recover such adverse interest in the property.

But there is another reason for affirming the decision of the circuit court dismissing the cross-bill, that is unanswerable. It is the *laches* of the parties holding the title the complainant in the cross-bill now seeks to maintain. The alleged assignment of Harris to Jacob Early was made in 1839. The deed from Cyrus F. Miller to Anson S. Miller was made as far back as 1847. There is no pretence that any one ever attempted to assert any title to the lands in controversy, derived from either assignee, until 1871, when the complainant in the cross-bill commenced his action in ejectment to recover the property. Since the alleged title vested in Early, more than thirty-two years had then elapsed, and since the supposed title vested in Miller, under the Bankrupt act, nearly twenty-four years had elapsed, and no one

had made any previous effort to recover the property. In the meantime, the property had been bought and sold many times, in the confident belief the purchasers were obtaining a perfect title,—some of them, at least, paying the full value of the property. The doctrine of *laches,* as understood by the court, has been often declared by its previous decisions. *Dempster* v. *West,* 69 Ill. 613; *Cox* v. *Montgomery,* 36 id. 398; *Winchell* v. *Edwards,* 57 id. 46; *Bush* v. *Sherman,* 80 id. 160. The principle that lies at the foundation of all the cases in this court on this subject is, the party who challenges the title of his adversary to real property, must be diligent in discovering that which will avoid the title or render it invalid, and diligent in his application for relief. Unreasonable delay, not explained by equitable circumstances, has always been declared evidence of acquiescence, and will bar relief. Surely the grantors of complainant in the cross-bill have not been diligent in their application for relief in this case. More than a quarter of a century was suffered to pass before any one attempted to assert any title acquired either from the assignee in bankruptcy or the assignee under the voluntary assignment made by Harris for the benefit of his creditors. Since then, the land involved has increased in value manifold times, and other rights have attached, founded in good faith and for valuable considerations; and now, at this late day, the complainant in the cross-bill seeks to have the title established in him. This would be inequitable, and especially after the lapse of so great a period, even if it should be conceded the former grantees may have had equitable rights in the premises, had they asserted them in apt time. Not a single fact is proven that stood in the way of an earlier application by them for relief, had they believed they were entitled to any. There is evidence, however, that tends to show the former grantees of the assignees of Harris had abandoned all claim to the property long years ago, and to induce the belief, the present claim is put forth, on the doctrine of chances

that a speculation might possibly be realized. It seems difficult to understand how the claim of ownership to this property, now become very valuable, from either source insisted upon, can be put forth in good faith. The proposition that the complainant in the cross-bill can assert any title to the property that his grantors could not, needs no argument in its support. Their *laches* will constitute as effectual a bar to him, as it would have been to them had this suit been brought in their names or by them. The decree dismissing the cross-bill was clearly warranted both by the law and the evidence, and should not be disturbed.

The appeal taken by Edward Howe, and that taken by Mary A. Frazier, William C. Clark, Mary C. Clark and Lora A. McCrary, will be dismissed, and the decree dismissing the cross-bill will be affirmed.

*Appeal dismissed and decree affirmed.*