## MARTHA E. SCOFIELD *et al.*

### *v.*

### ORVILLE OLCOTT *et al.*

*Filed at Springfield March 23, 1887.*

1. WILLS—*vested or contingent estate—rule of construction.* It is a rule of construction, that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has, by very clear words, manifested an intention that they should be contingent on a future event.

2. SAME—*equitable estate—vested remainder therein.* There may be a vested remainder in an equitable as well as in a legal estate. Where a testator devises the legal title of his property to his executors, for the use of his wife for life, or until her marriage, with the remainder to his son, the latter will take a vested equitable estate in remainder. And the fact that legacies are to be first paid after the determination of the particular prior estate, will not render the devise to the son contingent.

3. SAME—*vested estate defined—and of the distinction between a vested estate and one depending upon a contingency.* An estate is vested when there is an immediate right of present enjoyment, or a present fixed right of future enjoyment. It gives a legal or equitable seizin. It takes effect, in interest and right, immediately on the death of the testator, although it may not at that time take effect in possession and enjoyment; and if it be a remainder, it can not take effect, in possession and enjoyment, until the death of the devisee for life, or other determination of the particular estate.

4. It is the present *capacity* of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession *will* become vacant *before* the estate limited in remainder determines, that distinguishes a vested from a contingent remainder. When the event on which the preceding estate is limited, *must happen*, and when it also may happen before the expiration of the estate limited in remainder, that remainder is vested. It is also vested when it is limited to a person *in esse* and ascertained, to take effect, by words of express limitation, on the determination of the preceding particular estate.

5. A testator devised all his estate in trust to his executors, a part of which, after some legacies, was to be converted into money, and his son to be paid $12,000, and directed that the balance be held by them during the life of the testator's widow, or so long as she remained unmarried, paying her the rents, issues and profits, and then directed that upon her death or marriage the balance be sold and converted into money, and certain legacies be paid to his three sisters, after which the executors were required to convey, assign

and deliver all the rest of the estate to his son. The son died before his mother, leaving her his sole heir: *Held*, that the son took a vested equitable estate in remainder, and upon his death it passed to his mother.

6.  SAME—*personal legacy—whether it vests on the death of the testator, or not until a later period.* In regard to the vesting of personal legacies the payment of which is postponed to a period subsequent to the death of the testator, the general rule is, that when there is no original gift, but only a direction to pay at a future time, the vesting will be postponed until after that time. If futurity is annexed to the *substance* of the gift, the vesting is suspended; but if it appears to relate to the time of payment, only, the legacy vests instanter.

7.  There is a distinction between a gift of a legacy to a person to be paid to him at a future time, and a direction to pay or transfer the legacy to him at a future time. In the former case, the legacy vests immediately; but when the gift is merely by a direction to pay to him at a future time, the legacy does not vest forthwith, and until the time arrives he will have no vested interest.

8.  Even though there be no other gift than in the direction to pay or distribute *in futuro*, yet if such payment or distribution appears to be postponed for the convenience of the fund or property, as, when the future gift is postponed to let in some other interest, (as, when there is a prior gift for life, or after payment of debts,) the gift in remainder vests at once; but when the payment is deferred for reasons personal to the legatee, the gift will not vest till the appointed time.

9.  SAME—*leaving a part of an estate intestate—whether so intended— rule of construction.* The courts will adopt any reasonable construction of a will so as to give it effect to dispose of the testator's entire property, rather than to hold an intention to die testate in part and intestate as to other property.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. HOLDEN & FARSON, for the appellant Martha E. Scofield:

That the testator did not intend his son, William, should have a present vested estate in the residue, is evidenced—

*First*—By the legacy of $12,000, *in presenti*, to him, together with all the testator's personal effects.

*Second*—By the vesting of the entire estate in the trustees, with directions to them to convey, assign and deliver to Wil-

liam at a future time. *Steib* v. *Whitehead,* 111 Ill. 251; *Kirkland* v. *Cox,* 94 id. 400.

*Third*—By the gift of the life income to the widow, showing that, at all events, she was not to have the residue. *Welsch* v. *Savings Bank,* 94 Ill. 202.

*Fourth*—By providing for the death of legatees before the time of payment, in the sixth clause of the will, and failing to make a similar provision in the case of the residuary gift to William, in the seventh clause, although the gift to him was subject to the same contingencies. *Travis* v. *Morrison,* 28 Ala. 500.

*Fifth*—By the direction to "convey, assign and deliver," *in futuro,* to William, which constitutes the only gift to him of the property in dispute. *Travis* v. *Morrison,* 28 Ala. 500; *Lambert* v. *Harvey,* 100 Ill. 338; *Welsch* v. *Savings Bank,* 94 id. 199.

*Sixth*—By the fact that by contrary construction the inheritance of the heirs will go to strangers. *King* v. *Crawford,* 17 S. & R. 120.

Where the whole scope of a will shows an intention not to give vested interests to the children, no argument of supposed necessity or expediency will be allowed to accelerate the vesting. *Hotchkin* v. *Humfrey,* 2 Madd. 65.

The fact that our construction would cause an intestacy as to the residue, can not control the vesting. *Anderson* v. *Felton,* 1 Ired. Eq. 59; *King* v. *Crawford,* 17 S. & R. 120; *Lambert* v. *Harvey,* 100 Ill. 338.

That there is no distinction, as to vesting, between a bequest of the residue and an ordinary pecuniary legacy, see *Addison* v. *Busk,* 14 Beav. 459; *Shum* v. *Hobbs,* 3 Drewry, 93; *Hanson* v. *Graham,* 6 Ves. 248; *Leake* v. *Robinson,* 2 Mer. 386, and various cases postponing the vesting of a residue, hereinafter cited.

The same general principles which regulate the vesting of devises of real estate, apply, to a considerable extent, to gifts

of personalty. 1 Jarman on Wills, (Bigelow,) 833; *Walker* v. *Mower*, 16 Beav. 369.

Where the only gift is in a direction to divide or pay at a future time, whether upon the happening of a contingent event or an event certain to occur, the person must be in existence at that time, to take. 2 Williams on Executors, 1334; 1 Jarman on Wills, (Bigelow,) 837, 839, 840; *Hall* v. *Terry*, 1 Atk. 502; *Shum* v. *Hobbs*, 3 Drewry, 93; *Murray* v. *Tancred*, 10 Sim. 465; *McCartney* v. *Osburn*, 118 Ill. 403; *Walker* v. *Mower*, 16 Beav. 365; *Beck* v. *Burr*, 7 id. 492; *Anderson* v. *Felton*, 1 Ired. Eq. 55; *Allen* v. *Whitaker*, 34 Ga. 6; *Cogburn* v. *Ogilby*, 18 id. 58; *Collier* v. *Slaughter*, 20 Ala. 263.

When the gift is found in the direction to pay or divide, then the attainment of the age at which payment or division is to take place, is a condition precedent to the vesting. *Leake* v. *Robinson*, 2 Mer. 363; *Locke* v. *Lambe*, L. R. (4 Eq.) 372; *Merry* v. *Hill*, id. (8 Eq.) 619; *Snow* v. *Snow*, 49 Me. 159; *Sansbury* v. *Read*, 12 Ves. 75; *Gifford* v. *Thorn*, 1 Stockt. 702.

Where there is no gift but by a direction to pay or transfer "from and after" a given event, the vesting must be postponed until after that event has happened. *Billingsley* v. *Wills*, 3 Atk. 219; *Leake* v. *Robinson*, 2 Mer. 363; *Judd* v. *Judd*, 3 Sim. 525; *Stead* v. *Platt*, 18 Beav. 50; *Booth* v. *Booth*, 4 Ves. 399.

The question of contingency is immaterial in these cases. *Smell* v. *Dee*, 2 Salk. 415.

A legacy payable after the lapse of a certain time,—as, a number of years,—will lapse by the death of the legatee before that time. *Smell* v. *Dee*, 2 Salk. 415; *Bruce* v. *Charlton*, 13 Sim. 65; *Spink* v. *Lewis*, 3 Brown's Ch. 355.

Where a testator clearly expresses his intention that a legacy shall not vest until his debts are paid, it will be regarded. *Bernard* v. *Montague*, 1 Mer. 422; *Valentine* v. *Ruste*, 93 Ill. 585.

So where the legacy is given only after the making of a sale. 1 Jarman on Wills, (Bigelow,) 603, 604; 2 id. 818;

*Gaskell* v. *Harman,* 6 Ves. 159; *Elwin* v. *Elwin,* 8 id. 546; *Leeds* v. *Wakefield,* 10 Gray, 520; *People* v. *Jennings,* 44 Ill. 488; *Valentine* v. *Ruste,* 93 id. 585.

So where the vesting is postponed until payment is actually made: *Law* v. *Thompson,* 4 Russ. 92.

That the legacy is contingent and has therefore lapsed: *Snow* v. *Snow,* 49 Me. 159; *Ackers* v. *Phillips,* 3 C. & F. 665; *Norris* v. *Huthwaite,* cited 1 Brown's Ch. 182; *Gaskell* v. *Harman,* 6 Ves. 159; *Selby* v. *Whittaker,* L. R. (6 Ch. Div.) 246; *Bruce* v. *Charlton,* 13 Sim. 68; *Allen* v. *Whitaker,* 34 Ga. 31; *Travis* v. *Morrison,* 28 Ala. 494; *Anderson* v. *Felton,* 1 Ired. Eq. 55.

It is impossible to acquire a vested interest in a fund which is itself contingent. *Fitzgerald* v. *Field,* 1 Russ. 439; *Hotchkin* v. *Humfrey,* 2 Madd. 65.

Mr. N. A. WOODWARD, for the appellant Jane A. Wright:

Until the trusts were fully executed, no court could have taken the property out of the hands of the trustees, and passed it to the *cestuis que trust.* *Lent* v. *Howard,* 89 N. Y. 169; *Graff* v. *Bonnett,* 31 id. 9; *Douglas* y. *Cruger,* 80 id. 15.

Neither the widow nor the son, in their lifetime, could sell, convey or create a lien upon the real estate which was vested in the trustees. *Noyes* v. *Blakeman,* 6 N. Y. 567; *Van Epps* v. *Van Epps,* 9 Paige, 237; *Harnett* v. *McDougal,* 8 Beav. 87.

When there is no gift, but a direction to pay or divide at a future time, the vesting will not take place until that time arrives. 2 Williams on Executors, 1334; *Warner* v. *Durant,* 76 N. Y. 133; *Vincent* v. *Newhouse,* 83 id. 505. See, also, *Newell* v. *Nichols,* 75 N. Y. 78; *Matteson* v. *Armstrong,* 11 Hun, 245; *Phipps* v. *Lord Mulgrave,* 3 Ves. 613; *Wadley* v. *North,* 3 id. 364; *Tawney* v. *Ward,* 1 Beav. 563.

Mr. FRANKLIN DENISON, and Mr. THOMAS B. MARSTON, also for the appellant Jane Wright.

Mr. RUFUS KING, for the appellees, contended, that William took a vested remainder,—citing 4 Kent's Com. 198; 2 Jarman on Wills, 420, 436, 232; 2 Cooley's Black. 162; 2 Redfield on Wills, 215, 237; 2 Williams on Executors, 1340, 1357; Preston on Estates, 70; Bingham on Descents, 56, 63; *Ackless v. Seekright,* Breese, 46; *Hempstead v. Dickson,* 20 Ill. 194; *Ruffin v. Farmer,* 72 id. 615; *Land and Loan Co. v. Bonner,* 75 id. 315; *Green v. Hewitt,* 97 id. 113; *Smith v. West,* 103 id. 332; *Lunt v. Lunt,* 108 id. 307; *Marvin v. Ledwith,* 111 id. 145; *Railsback v. Lovejoy,* 116 id. 442.

Mr. GEORGE BURRY, for a part of the appellees:

A devise to a person, to be paid after debts and legacies, is not to be regarded as contingent because the estate may be exhausted. The debts and legacies are regarded only as charges upon the estate. *Bowling v. Dobyn,* 5 Dana, 438; 1 Jarman on Wills, *820; Theobald on Wills, (2d ed.) 476.

Legal and equitable interests given by wills are governed by the same rules. The result is the same whether the son took an equitable or a legal remainder. The interposition of the trustees makes no difference. 1 Jarman on Wills, *811; *Doe v. Considine,* 6 Wall. 469; *Phillips v. Ackers,* 9 Cl. & F. 583.

For definitions and illustrations of a vested remainder, see *Smith v. West,* 103 Ill. 337; *Browne v. Lawrence,* 3 Cush. 397.

The law favors the vesting of real estates, and where there is any doubt as to the time at which the estate was intended to vest, it will be held to vest at the earliest possible time. 1 Jarman on Wills, (R. & T. ed. 1880,) *799; Theobald on Wills, (2d ed.) 400; *Doe v. Considine,* 6 Wall. 475.

A devise of an ulterior estate following a devise of a particular estate, and expressed to be on or after a certain event, which event determines the first estate, gives a vested interest. 1 Jarman on Wills, *790, *805, *806; Theobald on Wills, (2d ed.) 405; *Leadbeater v. Cross,* 2 Q. B. D. 18; *Weston v. Weston,* 125 Mass. 268; *Ackerman v. Gorton,* 67 N. Y. 63;

*Wiggin* v. *Perkins,* 6 Atl. R. 905; *Santa Clara* v. *Sullivan,* 6 N. E. R. 183; *McArthur* v. *Scott,* 113 U. S. 375.

The postponement is for a reason not personal to the devisee, and such a case is an acknowledged exception to the rule. *Leeming* v. *Sherratt,* 2 Hare, 15; *Bennett's Trust,* 3 K. & J. 280; Theobald on Wills, (2d ed.) 412; 1 Jarman on Wills, (Bigelow,) \*835, note 1, \*840.

The direction to pay is not the only original gift in this will. The will itself is a gift and equitable conveyance. *Phillips* v. *Ackers,* 9 Cl. & F. 583; *Weston* v. *Weston,* 125 Mass. 269; *Strother* v. *Dutton,* 1 DeG. & J. 675.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

George T. Abbey died testate on August 10, 1872, leaving a widow, Julia M. Abbey, and one child, a son named William Abbey. The provisions of his will are as follows:

*First*—"I devise and bequeath to my beloved wife, and to Orville Olcott and William H. Rider, whom I hereby make, constitute and appoint executors of this my will, and trustees of my estate, all my real and personal property of every name and nature, except as hereinafter mentioned; to have and to hold the same for the uses and purposes, and upon the trusts, hereinafter particularly set forth.

*Second*—"I give and bequeath to my beloved son, William, all my personal effects, except my money, notes, bonds, mortgages and evidences of debt, and except my double-barrelled No. 12 shot gun.

*Third*—"I order and direct my said executors, within three months from the date of my death, to convert into money sufficient of my property so to do, and to pay to my said son, William, the sum of $12,000 cash.

*Fourth*—"I give and bequeath to my friend, . . . . . . . . . . ., my No. 12 double-barrelled shot gun.

*Fifth*—"I order and direct my said executors to hold the remainder of my property, both real and personal, for and

during the lifetime of my wife, or so long as she shall remain unmarried, and to pay the rents, issues and profits of the same to her.

*Sixth*—"Upon the marriage or death of my said wife, I order and direct the other of my said trustees and executors to sell and convert into money sufficient of the remainder of my property to pay the following bequests, and to pay the same within three months from the death or marriage of my said wife, to-wit: $5000 to my sister, Harriet Abbey; $5000 to my sister, Mary Ann Welsh; $5000 to Jeannette Carpenter; and in case of the death of either of above named legatees, I order and direct my said trustees to pay the amounts named to the heirs of the body of such deceased legatees.

*Seventh*—"I order and direct my said trustees to convey, assign and deliver all the rest and residue of my estate to my said son, William, as soon as said legacies shall have been fully paid.

*Eighth*—"In order to enable my said executors and trustees fully to carry into effect the objects of this my will, I hereby fully authorize them, and the survivors or survivor of them, to sell and convey, or to mortgage or convey by trust deed, such of my real estate as may be necessary, in their opinion, to provide the means for the payment of above legacies and the settlement of my estate."

William Abbey died intestate and unmarried on August 17, 1879, leaving, as his only heir-at-law, his mother, Mrs. Julia M. Abbey. Julia M. Abbey, who did not re-marry, died testate on January 23, 1886, and, by the terms of her will, after making bequests of money and personal property to various individuals, gave $3000 to St. Luke's Hospital of Chicago, $3000 to the Chicago Hospital for Women and Children, and $500 to the Graceland Cemetery Company of Chicago for the purpose of keeping her cemetery lot in good order. She appointed Orville Olcott and Rufus King her executors.

The appellant is a sister of George T. Abbey. The contention is between the heirs of George T. Abbey, who are his brothers and sisters, on the one side, and the executors and devisees under the will of Julia M. Abbey, on the other side. The property in dispute is the "rest and residue" of the estate, mentioned in the seventh clause of the will. The appellant claims, that William Abbey, having died before the death of his mother, had no interest in the property in question, which could descend to his heirs, and that, therefore, the said property fell back into the estate, as in case of intestacy, and went to the heirs of George T. Abbey. On the other hand, appellees claim, that William Abbey owned, at the time of his death, an inheritable interest in such "rest and residue" of the estate, and that such interest descended to his mother, as his only heir-at-law, and passed, by the terms of her will, to the appellees.

The trustees under the will of George T. Abbey took title to two parcels of land. One of these was mortgaged to raise $12,000 to pay to William. Afterwards they sold one parcel for $93,000 and out of the said proceeds paid the mortgage and the legacies of $15,000 and certain expenses. There now remains of the $93,000 the sum of $60,000. They also hold the other parcel of land, and the title thereto is in controversy in this suit. The decree of the Superior Court of Cook county, from which this appeal is taken, directed the said trustees to pay the $60,000 to the executors of Julia M. Abbey to be distributed according to the terms of her will, and to convey the parcel of land remaining unsold to the persons entitled thereto under the will of the said Julia.

The only question in the case is whether the residuary interest in the estate vested in William Abbey at the time of his father's death. If William's interest was a vested one, it passed to his mother, when he died.

An estate is vested, when there is an immediate right of present enjoyment, or a present fixed right of future enjoy-

ment. It gives a legal or equitable seizin. A vested remainder is a fixed interest, to take effect in possession after a particular estate is spent, (4 Kent, 202,) and is, thereafter, invariably fixed to a determinate person. (*Bowling* v. *Dobyn*, 5 Dana, 441.) It takes effect in *interest and right* immediately on the death of the testator, although it may not take effect, indeed, if it be a remainder, it can not take effect, in *possession and enjoyment*, until the death of the devisee for life, or other determination of the particular estate. (*Brown* v. *Lawrence*, 3 Cush. 397.) In case of a vested remainder, a present interest passes to a certain and definite person, to be enjoyed *in futuro*. (*Doe* v. *Considine*, 6 Wall. 474.) Every remainder-man may die without issue before the death of the tenant for life. It is the present *capacity* of taking effect in possession, if the possession were to become vacant, and not the certainty, that the possession *will* become vacant *before* the estate limited in remainder determines, that distinguishes a vested from a contingent remainder. When the event, on which the preceding estate is limited, *must happen*, and when it also may happen before the expiration of the estate limited in remainder, that remainder is vested. (4 Kent, 203.) It is also vested when it is limited to a person *in esse* and ascertained, to take effect by words of express limitation on the determination of the preceding particular estate. Preston on Estates, 70.

Viewed in the light of the definitions, here quoted, the interest of William Abbey was a vested one. The testator devised and bequeathed all his real and personal property (except that embraced in the second and fourth clauses) to his executors and trustees "to have and to hold the same for the uses and purposes and upon the trusts," mentioned in clauses 3, 5, 6 and 7.

A will takes effect at the death of the testator. At the death of George T. Abbey the legal title to all his property vested in the trustees for the uses and purposes above set

forth. It so vested at that time for all such purposes and for one as much as another. As soon as the testator died, the trustees at once took title to the residue, named in clause 7, and at once and thereafter held it in trust to be conveyed, assigned and delivered to William, when the proper time should come. It is true, that his enjoyment of it was to be postponed, until a future period. But their holding it in trust to be conveyed to him began immediately upon his father's death. They took their legal title at that time, and, at the same time, he took the equitable title. At his father's death there vested in him a present equitable right to have a conveyance from the trustees, when his mother's life estate should determine, subject to the payment of the legacies of $15,000; he then had "a present fixed right," although only an equitable one, of future enjoyment. This right vested, not in a person thereafter to be born, but in a person, definite and ascertained, and then in being. The preceding estate was limited upon the death of Mrs. Abbey, an event which "*must happen.*"

The same general principles, which regulate the vesting of devises of real estate, apply, to a considerable extent, to gifts of personalty. But in regard to the vesting of personal legacies, the payment of which is postponed to a period, subsequent to the decease of the testator, the general rule is, that where there is no original gift, but only a direction to pay at a future time, the vesting will be postponed till after that time. 1 Jarman on Wills, (Bigelow's ed.) pp. 833, 836, 839. If futurity is annexed to the *substance* of the gift, the vesting is suspended; but, if it appears to relate to the time of payment only, the legacy vests instanter. (Idem.) There is a distinction between a gift of a legacy to a person to be paid to him at a future time, and a direction to pay or transfer the legacy to him at a future time. In the former case, the legacy is considered as vesting in him immediately; but where the gift is merely by a direction to pay to him at a future

time, the legacy does not vest forthwith; until the time arrives, he has no vested interest in the bequest. *Jones* v. *Mac Milwain*, 1 Russ. 223.

But even though there be no other gift than in the direction to pay or distribute *in futuro*, yet, if such payment or distribution appear to be postponed for the convenience of the fund or property, as where the future gift is postponed to let in some other interest, for instance, if there is a prior gift for life, or a bequest to trustees to pay debts, and a direction to pay upon the decease of the legatee for life, or after payment of the debts, the gift in remainder vests at once, and will not be deferred until the period in question. But where the payment is deferred for reasons personal to the legatee, the gift will not vest till the appointed time. 2 Jarman on Wills, (R. & T.'s ed.) 458; Theobald's Law of Wills, 412. Thus, a gift to a person, if or when he shall attain a certain age, will not vest, until the age is attained. (Idem.) In other words, if the reason for the postponement is the position of the *fund,* the bequest in remainder vests at once; but if it is the position of the *legatee,* the remainder is contingent. *In re Bennett's Trusts,* 3 Kay & J. 280.

An application of these further definitions to the case in hand will show, that the interest of William Abbey vested at the death of his father. Even if it be admitted that there was no original gift to him, but only a direction to pay, or to "convey, assign and deliver" at a future time, yet the postponement was merely for the convenience of the property; it was for the purpose of letting in the life interest of his mother; there was a prior gift of the "rents, issues and profits" to her; there was a direction to the trustees to "convey, assign and deliver" to him, after the determination of the life estate and after the payment of legacies. The reason of the postponement was not personal to him; there was no postponement of payment until he should arrive at the age of twenty-one years, or at any other age.

The rules in regard to vested and contingent remainders are, in many respects, so technical and artificial, that exceptions, like that above indicated, have been created to relieve their harshness. It has long been a settled rule of construction in the courts of England and America, that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has, by very clear words, manifested an intention, that they should be contingent on a future event. (*McArthur* v. *Scott,* 113 U. S. 375.) No such intention is apparent in the will, now under consideration.

The testator in this case evidently intended, that the whole of the remainder of his estate, mentioned in clause 5, should be used for the support of his wife as long as she lived, or remained unmarried, and that, upon her death or marriage, and after the payment of certain legacies, the residue should belong to his son. He probably never thought of the contingency of his son's death before that of his wife. He disposed of his whole estate, and it does not appear, that he designed any portion of it to be intestate. There is certainly no evidence of any intention, that his brothers and sisters should have the residue, named in clause 7. It has been said, that the idea of any one deliberately purposing to die testate as to a portion of his estate and intestate as to another portion is so unusual in the history of testamentary dispositions as to justify almost any construction to avoid it. 2 Redfield on Wills, 235 ; 2 Jarman on Wills, (R. & T. ed.) 469.

But it is urged, that no interest vested in William Abbey at his father's death for the reason, that the will provides for the intervention of trustees and for a *conveyance* by such trustees. It is well settled, however, that there may be a vested remainder in an equitable, as well as in a legal estate.

In *Female Academy* v. *Sullivan,* 116 Ill. 375, the estate was devised to the widow in trust for the support of herself and children during her lifetime, and, at her death, to descend to the children. One of the children died before her mother,

and made a will, devising her interest in the estate; that interest was only an equitable one, because the legal title was in the mother, as trustee; we held, however, that such interest was a devisable one, and was a vested remainder. In *Phillips* v. *Ackers*, 9 Cl. & F. 583, it was held, that, where the immediate interest was vested in trustees, who were directed to assign and convey at a future time, the vesting of the remainder was not postponed until that time, and the interest was not contingent; the Lord Chancellor said, "the only question is this, whether a different construction should be put on this will, which conveys an equitable estate, from that which the learned judges have put upon the will as applied to a legal estate, or, in other words, whether the direction to convey makes any difference with respect to the disposition of the property; I am clearly of the opinion, that it does not." In *Weston* v. *Weston*, 125 Mass. 268, the will gave the residue to trustees to support the testator's widow during her life, and provided as follows: "As soon as may be after the decease of my said wife my said trustees or their successors shall convey, transfer or pay to my son and daughter in equal shares all the estate here given in trust;" the court say, "we are of opinion, that the will gave * * * a vested equitable interest, expectant on the termination of the life estate. * * * The interest in the residue was given by the will, not by the conveyance from the trustees. Such conveyance is necessary only to make that a legal estate or interest, which, under the will, and prior to the conveyance, was an equitable interest." To the same effect is *Doe* v. *Considine*, 6 Wall. 469.

It is said, that, in this case, the interest in question was not a vested one at the death of the testator, for the alleged reason, that the estate in remainder was not to take effect at the expiration of the life estate, but after the lapse of three months thereafter, during which time property was to be sold, and, out of the proceeds of such sales, legacies to the amount

of $15,000 were to be paid. This position, however, is not sound. A devise to a person after the payment of debts and legacies is not contingent, until such debts and legacies are paid; such a devise confers an immediately vested interest; the words of apparent postponement are considered only as creating a charge. 2 Jarman on Wills, (R. & T.'s ed.) 476; 2 Redfield on Wills, 210-232; *Bowling* v. *Dobyn*, 5 Dana, 438; *Railsback* v. *Lovejoy*, 116 Ill. 442; 1 Jarman on Wills, (Bigelow's ed.) 820; Theobald on Wills, 476. Nor does the power of sale prevent the vesting of the estate; the estate vests, subject to such power. The legacies, named in clause 6, were a charge upon the estate, and William Abbey took a vested remainder, subject to such charge. The equitable title vested in him in remainder, subject to be divested to so great an extent or for such portions of the property, as might be necessary to discharge the legacies.

In *Bowling* v. *Dobyn, supra,* the court say: "From all these authorities, it seems clear, whether a devise is made to an executor for the payment of debts, or a power to sell for that purpose, or a charge is otherwise imposed on the estate for that object, or other special objects, that it has been construed as a charge merely, and not as an impediment to the devise or descent of the fee or freehold."

In *Railsback* v. *Lovejoy, supra,* it was held, that a power of sale, conferred by a will, did not make the remainder, after the expiration of the life estate, a contingent remainder.

The decree of the Superior Court is affirmed.

*Decree affirmed.*