## Hayward et al. v. Loper et al., Executors, etc.

49   53'
¹147s  41

1.  *Wills—Construction.*—It is a familiar rule of construction that a testator is presumed to dispose of all his estate, and it has been said that the idea of any one deliberately proposing to die testate as to a portion of his estate, and intestate as to another portion, is so unusual in the history of testamentary dispositions, as to justify almost any construction to avoid it.

2.  *Wills — Residuary Legatees — Presumption.* — A testator in his original will made provision for his wife and then made the following specific bequests: To his daughter Lodusky, $3,000; to his daughter Leni, $1,500; to his son, Cruce V. Loper, one dollar; to his granddaughter Nellie W. Sherman, $1,500; to his granddaughter Dellie M. Sherman, $1,500; and then directed that all the residue, together with the wife's portion at her death, be divided into three equal shares or parts, and given as follows: One of said equal shares or parts to Gideon B. Loper, one to Ophelia Loper, and one to Adriana Loper, thus disposing of his entire estate.

By a codicil he recited in detail the provisions of the original will, by which he disposed of the residue of his estate, in equal parts, to Gideon B. Loper and his two daughters, Ophelia and Adriana, and then declared that the share of Gideon B. Loper be reduced the amount of $5,000, the share of his daughter Ophelia be reduced the amount of $8,000, and the share of his daughter Adriana be reduced $3,600. This codicil made no disposition of these reductions. The reasonable presumption is that after the making of the original will the testator disposed of a portion of his estate and gave such portion or its proceeds to the residuary legatees, in the unequal amounts mentioned in the codicil, and that the reductions there stated were to be considered only as between the recipients of his bounty, in equalizing their shares in the residue, and that he had not intended to withdraw the aggregate from them, and leave it undisposed of.

3.  *Advancements.*—A person after making his will, by which he bequeathed to a daughter the sum of three thousand dollars, made an arrangement by which he advanced to her the amount, and took from her the following note:

"$3,000.                                    CHESTERFIELD, ILL., Feb. 1, 1875.
————————————after date I promise to pay to the order of A. W. Loper, note to run during my natural life, three thousand dollars, value received, with eight per cent per annum from date.
                                        LODUSKY HAYWARD."

At the death of the testator it was insisted on behalf of the maker that the note was not payable until her death, and that she was entitled to her legacy in money. *It was held,* that the word *my* should be read *his,* and that the note was payable at the death of the payee, who was the testator.

**Memorandum.**—Bill to construe a will. Appeal from a judgment rendered by the Circuit Court of Macoupin County; the Hon. JESSE J. PHILLIPS, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892, and affirmed. Opinion filed March 6, 1893.

APPELLANTS' BRIEF, VICTOR M. GORE AND ANDERSON & BELL, ATTORNEYS.

When an instrument is couched in plain terms, having a distinct and perfect idea, there is no room for construction. Bowers v. Porter, 4 Pick. (Mass.) 198; Carr v. Jeannesett, 2 McCord (S. C.) 66; The People v. N. Y. Cen. Ry. Co., 24 N. Y. 485, 488.

"In construing a will the intention of the testator as manifested by the words used must prevail." Banta v. Boyd, 118 Ill. 186. "Where the meaning is clear from unmistakable language, the will interprets itself, and subsidiary facts are not to be introduced in order to create a doubt." Huber's Appeal, 80 Pa. St. 348. In the case of Martindale v. Warner, 15 Pa. St. 471, the Supreme Court of Pennsylvania says: "Technical rules of construction are only applicable to wills in cases of doubtful interpretation, and are never allowed to defeat a plain intent expressed." A will is to be so construed as to give effect to every part; so that in the construction every provision and every clause will be given its proper force and effect. Bland v. Bland, 103 Ill. 11; Rountree v. Talbot, 89 Ill. 249; Burgan v. Cahill, 55 Ill. 160.

In the event of repugnance between two provisions, effect will be given to the latter provision as against a former repugnant provision; and effect will be given to the full extent of the words used in the latter clause. In McNeill v. Caruthers, 4 Brad. (Ill.) 552, this court lays down the rule as follows: "It is a rule in the construction of wills that a latter clause which is repugnant to a former provision, is to be considered as an intention to modify or abrogate the former." To same effect see Brownfield v. Wilson, 78 Ill. 467, and Osborn v. Bank, 116 Ill. 130.

A testator is presumed, when he makes his will, to dispose of all his property. This presumption may be rebutted in

many ways, but certainly in no way more effectually than by the provisions of the will. Higgins v. Dwen, 100 Ill. 554.

Appellees' Brief, L. P. Peebles and Rinaker & Rinaker, Attorneys.

The legal presumptions against intestacy and double portions, require a contrary construction.

" The idea of any one deliberately purposing to die testate as to a portion of his estate and intestate as to another portion, is so unusual in the history of testamentary disposition as to justify almost any construction to avoid it." 2 Redfield on Wills, 235; 2 Jarman on Wills, 469, quoted in Schofield v. Olcott, 120 Ill. 362.

It is a rule of law that between two equally probable interpretations, that one is to be adopted which prefers a testator's heirs to a stranger or avoids intestacy. 2 Woerner's law of Administration, 883; Taubenhan v. Dunz, 20 Brad. 262; 125 Ill. 524.

" In the absence of a clearly expressed intention to the contrary, it will be presumed that the testator intended by will to dispose of his entire estate." 2 Redfield on Wills, page 464, Sec. 18; Siddons v. Cockrell, 131 Ill. 653; Missionary Soc. v. Mead et al., 131 Ill. 338; Higgins v. Dwen, 100 Ill. 554; Taubenhan v. Dunz, 125 Ill. 524; Jenks v. Jackson, 127 Ill. 341.

" And so strong is this presemption, that the courts will adopt any reasonable construction to give a will effect to dispose of a testator's entire property, rather than to hold an intention to die testate in part, and intestate as to other property." Schofield v. Olcott, 120 Ill. 362; Redfield on Wills (Ed. of 1866), 442; Hamlin v. U. S. Express Co., 107 Ill. 443; Johnson v. Johnson, 98 Ill. 564.

Opinion of the Court, Wall, J.

This proceeding originated in the County Court on petition of the executors of Adriana W. Loper, deceased, for an order of distribution. The case was removed by appeal to the

Circuit Court where it was again heard and an order of distribution was made, from which an appeal has been prosecuted to this court.

Two questions are presented: 1st, as to the construction of the will and codicils; 2d, as to the construction of an instrument for the payment of money signed by Lodusky Hayward and payable to the deceased.

By the original will the testator disposed of his whole estate, giving his homestead with the household furniture, etc., to his wife for her natural life, a special legacy of $3,000 to his daughter Lodusky, a special legacy of $1,500 to his daughter Leni, the same to each of his two granddaughters, $1 to his son Cruce, and the residuum of his estate, together with the wife's portion at her death, to be divided into three equal shares, one to his son Gideon B., one to his daughter Ophelia, and one to his daughter Adriana.

By another clause he specially declared that he desired the three last named children to share equally and alike in all his property after the payment of the special legacies. The will was dated May 27, 1873.

On the 22d of April, 1879, the testator executed a codicil in which, after reciting the provisions of the will as to the residuary legatees and devisees, he provided as follows:

" First.  That the share of my son Gideon B. Loper be reduced the amount of fifty hundred dollars ($5,000.)

Second.  That the share of my daughter Ophelia, the wife of Henry Duckels, be reduced the amount of eighty hundred dollars ($8,000.)

Third.  That the share of my daughter Adriana, the wife of Charles Wright, be reduced the amount of thirty-six hundred dollars ($3,600.)"

On the 20th of August, 1889, he made another codicil by which he gave his son Cruce a certain tract of land for his natural life, and after his death the same was to be divided between the heirs of the said Cruce, share and share alike.

It is insisted on behalf of the special legatees that the sums

Hayward v. Loper.

mentioned in the first codicil, of $5,000, $8,000 and $3,600, to be reduced as to the several shares of Gideon, Ophelia and Adriana, aggregating $16,600, were to be withdrawn from the residuum and to become intestate estate, and this presents the first question for determination.

We think it is quite apparent the testator had no intention to take such an amount from the residuary legatees, and leave it as an intestate property. He manifested a clear purpose to dispose of all of his estate by will. He had given to Cruce, before the original will was made, all he then intended him to have, and took his receipt for it, as he stated in the will.

For reasons satisfactory to himself he gave unequal amounts to his daughters Lodusky and Leni. He gave special sums to his granddaughters, and he made a special provision for his wife. Having done this he gave the residue to his three children—Gideon, Ophelia and Adriana, and added a seemingly unnecessary clause for the purpose of emphasizing his purpose that they were to have the entire residuum.

In the first codicil he recites in detail that he had given them each one-third part of his property, real and personal, after special legacies were paid, and manifests no desire to change this general provision for their benefit, merely providing that their respective shares should be reduced in unequal amounts.

Here was a recognition that each was to have a share—one-third of the residuum—but no hint that the aggregate of these unequal amounts was to be taken out of the residuum and regarded as intestate estate.

And finally, he made his second codicil, by which he gave his son Cruce the use of a certain tract of land for his life, with remainder to his children. All this is inconsistent with the idea of leaving $16,600 intestate.

If we consider the effect of so doing the inconsistency is the more apparent.

One-third of the amount, over $5,000, would go to his wife as her absolute estate, and the residue would be divided

into seven shares of something over $1,600 each, thus adding one-half to the special legacy of Lodusky, doubling that of Leni and of the granddaughters, adding $1,600 to Cruce, to whom he had given but $1 for the reason stated, and giving the same amount to Gideon, Ophelia and Adriana. And further, it appears that this sum of $16,600 would not remain after deducting the special legacies from the estate.

It is to be presumed that the testator would not have so miscalculated. He knew what his estate was worth, and if he had intended such a result as here shown, he would have used very different means to reach it. So absurd a result was certainly not in his mind as to provide for a residuum and at the same time to provide for a withdrawal therefrom of a larger sum than the residuum itself, to be left as intestate estate.

It is a familiar rule of construction, that a testator is presumed to intend to dispose of all his estate, and it has been said that " the idea of any one deliberately proposing to die testate as to a portion of his estate, and intestate as to another portion, is so unusual in the history of testamentary dispositions, as to justify almost any construction to avoid it." 2 Red. on Wills, 225; 2 Jar. on Wills, 469; Schofield v. Olcott, 120 Ill. 362. The reasonable presumption is, that after the making of the original will, the testator disposed of a portion of his estate and gave such portion, or its proceeds, to the residuary legatees, in the unequal amounts mentioned in the codicil, and that the reductions there stated were to be considered only as between them in equalizing their shares in the residuum, and that he did not intend to withdraw the aggregate from them and leave it undisposed of. Indeed, proof was offered which would have shown such a division of a part of his property, equal to the amounts " reduced " by the codicil, but the court declined to hear it, and this ruling is assigned as a cross-error by the appellees.

The briefs of counsel call our attention to a number of adjudged cases, which are supposed to throw light upon the main question.

We find but little benefit, or assistance, from adjudi-

cations in other cases, for the reason that the wills under consideration in those cases are unlike this and unlike each other.

We must therefore apply the general rules of construction, which are not the subject of disagreement between counsel, to the peculiar case before us, and reach such conclusion as seems most consonant with reason.

We are inclined to hold that the Circuit Court properly construed the will and the codicils, regardless of the proffered evidence, and it is not necessary to consider the matter assigned as cross-error.

The second question arises upon the action of the court, in granting the request of the executors to be allowed to pay the specific legacy to Lodusky Hayward, by surrendering to her a note held by the deceased, against her, for the amount of her legacy, $3,000.

Soon after the execution of the will, the husband of Lodusky, residing with her then in Minneapolis, wrote to the deceased, suggesting that it would be agreeable to them to take whatever sum would be hers under the will and pay interest upon it during the life of the testator, and it was finally agreed that this should be done, and that she should give her note for the sum of $3,000, payable at the death of the testator, with interest at eight per cent per annum. The rate of interest then obtainable in Minneapolis was higher and the arrangement was a good one for her, for that reason, if for no other.

The correspondence was all between her husband and the testator, but she admits in her answer to the petition that her husband was acting for her and with her consent.

The note was written at the dictation of the testator by his daughter Leni, and was signed by said Lodusky, as follows:

$3,000.                    CHESTERFIELD, ILL., February 1, 1875.

—————— after date I promise to pay to the order of A. W. Loper, note to run during my natural life, three thousand dollars, value received, with eight per cent per annum from date.

                    (Signed)          LODUSKY L. HAYWARD.

It is now insisted on behalf of the maker, Lodusky, that it is not payable until her death, and that she is entitled to her legacy in money.

The words "note to run during my natural life," were dictated by the testator and were written, as testified by Leni, just as dictated, the word *my* being used where *his* was intended, or where that meaning was intended.

Lodusky admitted more than once that the note was payable at his death, and though she had promptly paid the interest for fifteen years she ceased to do so when he died. It was the intention of all parties that by this arrangement she was to secure her legacy in advance and to make the note payable at his death, not at hers. He was not skilled in the use of language, as is evident from the correspondence between him and Hayward and from other writings in proof, and there can be no doubt that by mere mistake the note was written as now appears.

It was not the intention that the money should be refunded, yet this would have been necessary had she died first, if the terms of the instrument are to be taken literally. The County Court had the requisite equity power to treat the note as the parties intended it in settling the estate, and the Circuit Court had similar power when hearing the case on appeal. We are of opinion the case was correctly decided by the Circuit Court, and the judgment will be affirmed.