City Trust & Savings Bank of Kankakee, Illinois, Trustee, Plaintiff in Error, v. Solon D. Knight et al., Defendants in Error.

Gen. No. 7,823.

Opinion filed July 30, 1928.

H. H. WHEELER, for plaintiff in error.

W. H. DYER and C. B. SAWYER, for defendants in error, Solon D. Knight et al.

JOHN H. BECKERS, for defendants in error, Camden Knight et al.

MR. JUSTICE JETT delivered the opinion of the court.

This is a writ of error sued out by the City Trust & Savings Bank of Kankakee, Illinois, trustee, plaintiff in error, to review an order of distribution entered by the circuit court of Kankakee county in the matter of a final report of plaintiff in error as trustee, under the last will and testament of Helen L. Huling.

Helen L. Huling died June 2, 1904, leaving a last will and testament. The second clause of her said will reads as follows: "I do give and bequeath to my nephew Harry Lee Knight, son of my late brother, Camden Knight, the use and income of forty thousand dollars ($40,000); that is say, that out of my estate, there shall be taken and held by Harry L. Crawford and H. M. Stone, now residents of the City of Kankakee, State of Illinois, jointly, the amount of forty thousand dollars ($40,000) in lawful money of the United States, as trustees and in trust for the use and benefit of said Harry Lee Knight, for and

during his lifetime, and to so manage and invest the sum as to realize therefrom a sure and good income as practicable, and to render an account of, and pay to said Harry Lee Knight during his lifetime such income as the same shall be received by said trustees; and that at the death of said Harry Lee Knight the principal sum of said forty thousand dollars ($40,000) shall belong and be paid to Gertrude L. Knight, Carolyn Knight and Camden Knight, the daughters and son respectively of said Harry Lee Knight, to each one-third (1/3) thereof, provided that in case of the death of one of said trustees, or that one of said trustees shall become incapacitated or unable, from any cause, to perform the duties of said trust, then the survivor, or the other trustees, shall be authorized to act as sole trustee of said trust.''

In November, 1904, a bill was filed in the circuit court of Kankakee county, praying for a construction of each and every clause of the will of the said Helen L. Huling. After a hearing on said bill, decree was entered from which an appeal was prosecuted to the Supreme Court. An opinion was filed by that court and is reported in *Crawford v. Mound Grove Cemetery Ass'n,* 218 Ill. 399.

By reason of the construction given the will by the Supreme Court, the above-mentioned trust fund of $40,000 was augmented by payments made by the executors into the trust, so that the aggregate of the trust fund became $52,350. Thereafter, at the January term, 1906, of the circuit court of Kankakee county, and in accordance with the mandate of the Supreme Court, a final decree was entered in said cause. Said decree among other things provided for the payment of the trust fund of $40,000, out of the funds of said estate, said trust fund to be held by the trustees, during the lifetime of Harry Lee Knight for his use, and at his death the said sum of $40,000 was to be paid to Gertrude L. Knight, Carolyn L.

Knight and Camden Knight, to each a one-third part thereof, and that the proportionate share of the residuum of said estate assignable to said trust fund of $40,000 under the twelfth clause of said will, was to be added to said $40,000 and to become a part thereof, and to be by said trustees handled as a part of said trust fund. From the date of their appointment as executors of the estate of Helen L. Huling, deceased, H. M. Stone and Harry L. Crawford were the sole executors of said estate until it was closed in 1914. When the said H. M. Stone and Harry L. Crawford qualified as trustees under the said will of the testatrix the estate was closed in the county court of Kankakee county. H. M. Stone and Harry L. Crawford continued to act jointly as such trustees until the death of Harry L. Crawford. After the death of Harry L. Crawford, H. M. Stone continued to act as sole trustee until in February, 1919, when his resignation was accepted and his report was approved by the circuit court of Kankakee county. The Kankakee County Trust and Savings Bank of Kankakee was appointed as successor in trust to H. M. Stone; subsequent to its appointment said bank changed its corporate name to City Trust & Savings Bank of Kankakee, Illinois, and as such trustee said bank has acted continuously from the date of its appointment, and is now acting as the trustee of the trust fund in question.

It might be well to say in passing that the record discloses that the executors in September, 1905, and before the last above-mentioned decree was filed in the circuit court of Kankakee county, set apart and paid to themselves as directed under said second clause of said will, and for the purposes therein mentioned, the sum of $40,000.

Harry Lee Knight died August 2, 1926, being a widower at the time of his death. Carolyn Knight Maryon, his daughter, predeceased him, leaving surviving her no child nor children, nor descendants of

the same, but did leave surviving her, her husband, A. C. Maryon; that said Harry Lee Knight also left surviving him Gertrude L. Knight and Camden Knight; said Gertrude L. Knight and Camden Knight, children of the said Harry Lee Knight, are both adults, Camden Knight being the administrator of the estate of Harry Lee Knight, deceased.

The record shows that plaintiff in error filed its final report as trustee in November, 1926; upon the filing of the same it caused notice to be given of such report to all persons interested; answers were filed to this report; subsequently at the January term, 1927, an amended final report was filed, the answer filed to the original final report stood as answer to the amended final report, and upon hearing had on said amended final report, a decree of distribution was entered. The decree, as entered at the January term, 1927, of the circuit court of Kankakee county, finds that A. C. Maryon, surviving husband of Carolyn Knight Maryon, is not entitled to participate in the distribution of the trust fund, and it is urged by the plaintiff in error that such finding is erroneous, it being the contention of the plaintiff in error that under the second clause of the will of Helen L. Huling, Carolyn Knight Maryon took a vested interest in the trust fund, subject only to the life estate of Harry Lee Knight; that this trust fund, being personalty, upon the death of the said Carolyn Knight Maryon, the same descended under the statute of descent to A. C. Maryon, surviving husband of Carolyn Knight Maryon.

It is the contention of the defendants in error that the gift to the children of Harry Lee Knight is of personal property only, and arises from a mere direction to pay the fund to them at a future time, and that the context of the provision of the will raises the inference that the bequest is contingent upon the legatees surviving their father.

Cross errors are assigned by Camden Knight individually, and as administrator of the estate of Harry Lee Knight, deceased, and by Gertrude L. Knight, defendants in error.

It is the contention of the cross-complainants, who have assigned cross errors, that while the executors, trustees, sole trustee, and successors in trust have fully and accurately accounted for all funds received in the course of said trust, yet they insist that the will provides that the income received from the trust fund set apart for Harry Lee Knight should have been paid to Harry Lee Knight during his lifetime, as the same was received by said trustees. Under this provision they contend that said income should have been paid to Harry Lee Knight from the date of the death of Helen L. Huling and not only from the time that the executors set aside said fund as they have done, and that instead of paying the income from the date of the death of Mrs. Huling, the executors permitted the income on said forty thousand dollar trust fund to accumulate and become a part of the residuary estate from the time of her death, June 2, 1904, until September, 1905, or a period of about 15 months.

A number of questions are raised upon the record, the principal one of which involves the right of A. C. Maryon to share in the distribution of the said trust fund. The decision of this question depends entirely upon whether or not the children of Harry Lee Knight took a vested or contingent interest in the trust fund.

It will be observed from the language of the second clause of the will in question that the gift was not to a class but to certain named children who were designated as the persons to whom the fund should belong upon the death of their father. It is a rule of construction that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has, by very clear words, manifested an intention that they should be contingent on a future

event. There may be a vested remainder in equitable as well as in legal estates. Where a testator devises the legal title of his property to his executors for the use of his wife for life, or until her marriage, with a remainder to his son, the latter will take a vested equitable estate in remainder. *Scofield v. Olcott,* 120 Ill. 362. An estate is vested when there is an immediate right of present enjoyment, or a present fixed right of future enjoyment. It takes effect, in interest and right, immediately on the death of the testator, although it may not, at that time, take effect in possession and enjoyment; and if it be a remainder, it cannot take effect, in possession and enjoyment, until the death of the devisee for life, or other determination of the particular estate. *Scofield v. Olcott, supra.*

The law favors the vesting of estates at the earliest possible moment, and estates devised will vest in interest at the death of the testator unless some later time for their vesting is clearly expressed, by words of the will, or by necessary implication therefrom. *Carter v. Carter,* 234 Ill. 507–511, 512; *Scofield v. Olcott,* 120 Ill. 362; *Kellett v. Shepard,* 139 Ill. 433; *Grimmer v. Friederich,* 164 Ill. 245; and *Knight v. Pottgieser,* 176 Ill. 368.

There is no language in the will before us for consideration that indicates an intention that the devise to the children should be contingent upon their surviving their father. A contingent remainder is one limited to take effect, either to an uncertain person or upon an uncertain event. It is limited by the instrument creating it, either to a person not yet ascertained or not in being, or so as to depend upon an event which may never happen. It is an estate which is not ready to come into possession at any moment when the prior estate may end. On the other hand, if the estate is at any time ready to come into possession, providing the prior estate should end, then it is a vested estate. Whenever the person who is to succeed to the

estate in remainder is in being and is ascertained, and the event which by express limitation will terminate the precedent estate is certain to happen, the remainder is vested. The uncertainty which distinguishes the contingent from the vested remainder is not the uncertainty whether the remainderman will live to enjoy the estate, but whether he will ever have the right to such enjoyment. Here the persons to whom the remainder was given, and three children of Harry Lee Knight, were mentioned by name; they were in being and were ascertained; there was no uncertainty as to the persons who should take the remainder, and they had a present capacity to take it at the death of the testatrix, if the life estate of their father had been terminated. Neither was there any uncertainty as to the time; the death of the father was certain to happen, and the particular estate would be thereby terminated. *Carter v. Carter,* 234 Ill. 507–511, 512.

A bequest of personal property, though made wholly by direction to pay or distribute at the termination of a prior estate, will vest at once, the right of enjoyment only being postponed, where the distribution is not postponed for reasons personal to the legatee, but merely to let in the prior estate. *Knight v. Pottgieser,* 176 Ill. 368. In *Knight v. Pottgieser, supra,* there was a devise to the testator's wife for life, and upon her death "the same to go to and be divided amongst my children and their descendants in equal shares." It was held that the children took vested interests, because, though the gift arose wholly out of the direction to distribute *in futuro,* yet such distribution was deferred merely because of the presence of the life estate, and not for any reasons personal to the legatee.

In *Ducker v. Burnham,* 146 Ill. 9, testator devised to his wife for life, and on her death the estate then remaining to "be by my surviving executor, equally divided between my said five children." The interest of the children was held to be vested because the de-

vise was postponed only for the convenience of the property. In *Dee v. Dee*, 212 Ill. 338, after a gift to the testator's wife for life, of all real and personal property, the will provides: "After the decease of my said wife, all my property, both real and personal, shall be divided between all my children." It was held that the children took vested interests because the postponement was merely for the convenience of the estate, and not for reasons personal to the legatee.

It is insisted by the defendants in error that the Supreme Court, in its decision in construing the will in question, held that the devise of the fund mentioned in the second clause thereof, vested in the trustees and not in Harry Lee Knight or his children; that since it did not vest in Harry Lee Knight, or in his children, the remainder is a contingent one. With this contention, we cannot agree. The question presented in the construction of the will on the appeal was the disposition of certain funds which were to fall into the residuum. Clause 12 of the will provides: "It is my will that any property of my estate, real or personal, of whatever kind and wherever the same may be, which is not hereinbefore otherwise specifically mentioned and disposed of, shall, by the executors of this will, be converted into money, and such money shall be distributed and paid to the legatees hereinbefore named, other than the said named Cornelia Stone, Genevieve Parker, and May Parker, to each in proportion to the legacies hereinbefore specifically fixed and mentioned." It will be seen from a reading of the opinion of the Supreme Court that in the construction of the will it was necessary to ascertain who was meant as legatees, in view of clause 12, for the purpose of determining who should receive the residuum, and in order to do that it was held that the trustees were the legal legatees, to whom the money in the second and fourth clauses of the will, being the *corpus* of the trust fund held for the benefit of Harry Lee Knight and

George B. Knight, was given, and in whom, for all legal purposes, title was vested. The title was vested in them, the trustees, pending the period of the trust and for the purposes of the trust, and the court so held.

In its opinion, the court among other things, at page 407 (218 Ill.) said:

"We think a single consideration will dispose of all the questions raised by the respective parties touching so much of the residuum as follows the legacies for the benefit and use of Harry Lee Knight and George B. Knight. Harry Lee Knight was to take but a life estate in the legacy to him, and the vesting of the legacy to George B. Knight was contingent upon his attaining the age of thirty years. As we read and construe the will, the trustees are the legal legatees to whom the money in the second and fourth clauses of the will, being the *corpus* of the trust funds, held for the benefit of Harry Lee Knight and George B. Knight, was given, and in whom, for all legal purposes, title was vested. The said trust funds so vesting in them pending the period of the trust for the purposes of the trusts, they took immediate title to the *corpus* of such funds. No other rational conclusion can be drawn from the language of the will that 'such money shall be distributed and paid to the legatees hereinbefore named,' than that it meant those persons as legatees who took the immediate title to the legacies provided for in the will. If it be held that Harry Lee Knight is a legatee, it must as well be held, and we think with greater force, that his children, in whom the *corpus* is vested and who are to take after his life, are also legatees, and the peculiar question would be presented that is suggested by Harry Lee Knight as to the basis upon which such residuum should be divided between them; that is to say, whether Harry Lee Knight should take a portion of the residuum absolutely, such as his prospects for life under the life tables would give, and

the remainder be distributed among his children, or whether we should exclude his children from the class as legatees and give all to him, or exclude him from the class as a legatee and give all to the children. The mere suggestion of such a situation is a strong argument in favor of the position that the testatrix never contemplated that such questions should arise, but rather that, whatever portion of the residuum she distributed to the fund held for Harry Lee Knight and for George B. Knight, should follow the same course that the principal or *corpus* of the fund was directed to go and should vest in the trustees, and not in the children or in Harry Lee Knight or George B. Knight.'' This vesting however, as we have already seen, was vested in the trustees only for the period of the trust and for the purposes of the trust. The court in its decision recognized that the children of Harry Lee Knight took a vested interest in the trust fund provided for in the second clause of the will. It appears to us that the testatrix expressed a clear intention to place the *corpus* in the three children in equal shares upon the death of their father, and did not contemplate that any portion of the bequest would lapse by reason of the death of a child.

We are of the opinion, therefore, that the devise to the children in the second clause of the will was a vested interest and not contingent; that A. C. Maryon, as the surviving husband of Carolyn Knight Maryon, is entitled to share in the distribution of the trust fund and take the entire share which his wife would have taken, if living.

The next question presented for consideration is that arising by reason of the assignment of cross errors by the cross-complainants, in which they insist that it was the duty of the executors to pay income to Harry Lee Knight on the forty thousand dollar trust fund, from the time of the death of Mrs. Huling, which occurred June 2, 1904, until September, 1905, when the

executors set aside to themselves, as trustees, the sum of $40,000. In this connection it is well to keep in mind the second clause of the will which provides: "I do give and bequeath to my nephew Harry Lee Knight, son of my late brother, Camden Knight, the use and income of forty thousand dollars ($40,000); that is to say, that out of my estate, there shall be taken and held by Harry L. Crawford and H. M. Stone, now residents of the City of Kankakee, State of Illinois, jointly, the amount of forty thousand dollars ($40,000) in lawful money of the United States, as trustees and in trust for the use and benefit of said Harry Lee Knight for and during his lifetime, * * * and pay to said Harry Lee Knight such income as the same shall be received by said trustees." It will be noted that Crawford and Stone were not authorized, directed or empowered to act with reference to this income, except in the capacity of trustees, and that the direction was to take $40,000 out of the estate. In other words they were empowered as executors to pay to themselves, as trustees, $40,000 only out of her estate. This clause of the will expressly says that the income shall be paid "as the same shall be received by the said trustees." No payment was to be made out of the corpus of $40,000, nor out of the estate. It will be remembered that Mrs. Huling died June 2, 1904. A bill to construe her will was filed on the 14th day of November, 1904. The original decree in said cause was entered in May, 1905, and the final decree, after appeal to the Supreme Court, was entered on the 23rd day of January, 1906. In the final decree we find the following order: "It is further ordered, adjudged and decreed that the executors shall set apart, out of the funds of said estate, the sum of forty thousand dollars ($40,000), which shall be held in trust, the income of which shall be paid to Harry Lee Knight, during his lifetime." It is true, however, that the executors paid themselves, as trustees, the sum of

$40,000 in September, 1905, from which time it appears that the income on the entire sum was paid until the date of the death of Harry Lee Knight. The court, of course, in rendering its decree, had before it the question whether or not the executors should set aside the $40,000 as directed in said clause of the will. The record discloses that Harry Lee Knight was a party to the decree, and the suit in which it was entered. The decree was a final one, and all the parties thereto, including Harry Lee Knight, were bound by it.

No good reason has been suggested by the cross-complainants why the *corpus* of the trust fund should be disturbed to pay the income to the estate of Harry Lee Knight. It cannot be paid out of the trust fund, because the clause of the will providing for said fund expressly states that the income should be paid as received by the trustees. It is conceded by all parties in interest that Harry Lee Knight received the entire income from the trust fund, after it was established and set aside, up to the last report preceding his death, and the language of the will of the testatrix makes it plain that the income from the trust fund of $40,000, after the same was established, was all that he was entitled to receive.

Moreover, the time allowed for the investment of trust moneys is to be such as the circumstances of each case show to be reasonable. 39 Cyc. 392; *Holcomb v. Holcomb*, 11 N. J. Eq. 281. The fund was earning no income prior to the time of its being invested. The record shows that the executors of the will were discharged by the order of the county court of Kankakee county, entered at the October term, 1914, and the final report, on which said order was predicated, had attached to it the final receipt of Harry Lee Knight, dated March, 1914, by which receipt Harry Lee Knight receipted H. L. Crawford and H. M. Stone, executors, in full satisfaction of his distributive share of said estate and all demands against H. L. Craw-

ford and H. M. Stone, as such executors, and by said receipt he entered his appearance at the hearing upon the final report of said executors, waiving all notice of said hearing, and consented to the immediate discharge of Crawford and Stone from said office as executors, by the court.

It does not appear that Harry Lee Knight ever made any claim for the payment of the alleged income, now sought by the cross-complainants. The representative and heirs of Harry Lee Knight are estopped to claim by laches the income alleged to have been due him for the last 22 or 23 years. In *Genz v. Genz,* 254 Ill. 161, the court, at page 166, said: "The claim of complainants, upon its face and as set forth in their bill, appears to be stale, and the rule is almost universal that a court of equity will not encourage the assertion of a claim which is stale. *Howe v. South Park Com'rs,* 119 Ill. 101; *French v. Thomas,* 252 id. 65; *Kerfoot v. Billings,* 160 id. 563." A party who, with full knowledge of the facts, sleeps upon his rights for 19 years without asserting his equities, and no sufficient excuse for such delay is shown, his laches will be such as to present a bar to relief in a court of equity. *Castner v. Walrod,* 83 Ill. 171. When the question of laches is involved, facts which would put a person of ordinary prudence upon inquiry will charge him with such notice as could have been obtained had inquiry been made. *Mason v. Odum,* 210 Ill. 471.

The laches of Harry Lee Knight is imputable to his representative and heirs. *Genz v. Genz,* 254 Ill. 166. In view of the facts, as disclosed by the record and the law arising therefrom, we are of the opinion that the cross-complainants are not entitled to the relief they claim by reason of the assignment of cross errors.

We conclude, therefore, that the decree of distribution should have found that Carolyn Knight Maryon had a vested interest in the trust fund in question;

that although she predeceased the life tenant, her father, A. C. Maryon, her husband, is entitled to receive her share in said trust fund. Therefore, the decree and order of distribution is reversed and the cause remanded with directions that the trustee recast its account and pay to A. C. Maryon the share of the trust fund that would have gone to Carolyn Knight Maryon if she were living.

*Reversed and remanded with directions.*